Filed 7/29/13  P. v Valerio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072402 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F03257) |
| v. | |
| URIEL TORRES VALERIO, | |
| Defendant and Appellant. | |

Appointed counsel for defendant Uriel Torres Valerio has asked us to review the record to determine whether there exist any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  We shall affirm the judgment.

**BACKGROUND**

A jury found defendant guilty of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count I), making criminal threats (§ 422; count II), and two counts of

---

[1] Further undesignated statutory references are to the Penal Code.

1

misdemeanor vandalism (§ 594, subd. (a); counts III & IV). The jury found defendant used a deadly weapon in the commission of count II. (§ 12022, subd. (b)(1).)

The trial court sentenced defendant to four years in state prison on count I and two years plus one year for the deadly weapon enhancement on count II, stayed pursuant to section 654. The court sentenced defendant to 30 days concurrent on count III and 30 days stayed on count IV. The court also imposed the following fines and fees: $240 restitution fines in accordance with sections 1202.4 and 1202.45; victim restitution of $1,174.25 (§ 1202.4, subd. (f)); a main jail booking fee of $340 (Gov. Code, § 29550.2); and a main jail classification fee of $62 (Gov. Code, § 29550.2). The court credited defendant with 354 days of presentence custody credit (177 actual & 177 conduct).

*Facts from jury trial*

Carlos Gomes owned an automobile detailing shop in Sacramento and defendant sometimes worked for Gomes. In January 2012, Gomes sold a car to defendant for payments; Gomes kept the pink slip. Defendant soon stopped making payments; on May 2, 2012, Gomes caused the car to be towed. That same afternoon, defendant went to Gomes's auto shop and demanded the return of the car, threatening Gomes. Defendant left and Gomes reported the incident to the police.

About 7:00 p.m. on May 2, Edith Villanueva and Oliva Garcia drove into the driveway of the residence they shared with Gomes. Each testified they saw defendant, with whom they were acquainted, pouring sugar into the gas tank of a Chevy Camaro belonging to Gomes. Robert Mijach, who lived next door to Gomes, saw a man pouring sugar into the gas tank of the Camaro as Villanueva and Garcia drove up. Mijach was unable to identify defendant in court as the man he had seen.

During the morning of May 3, 2012, Gomes was at his shop, crouched down, working on a car door. Defendant came up behind Gomes, grabbed him by the neck, choked him, and placed a knife to his throat. Defendant told Gomes he was going to kill

2

him and moved the knife to Gomes's cheek and ribs while making threats. Gomes feared he was going to be killed. Defendant threw Gomes to the ground and hit him.

Sanjeev Mishra, who worked in an auto repair shop next to that of Gomes and was acquainted with defendant, heard yelling and screaming coming from Gomes's shop. Mishra went to see what was happening and saw defendant holding Gomes from behind with one arm and holding a knife to Gomes's neck with the other. Mishra called 911 and defendant ran. When Mishra spoke to the police he described defendant as "a light-skinned Black guy." However, Mishra identified defendant in court as the person he had seen attacking Gomes.

Deputy Sheriff Darren Benato responded to Gomes's shop about 10:15 a.m. Benato saw injuries to Gomes's face, eye, forehead, and left hand. Benato did not see any injuries to Gomes's neck and Gomes did not mention having been choked.

Jeremy Armstrong, called by the defense, testified that he and defendant are friends and that Armstrong's sister is defendant's girlfriend. On May 3, 2012, Armstrong went to defendant's residence around 9:30 to 10:00 a.m., and defendant arrived about 20 minutes later. The two walked to a 7-Eleven and returned 15 minutes later. Armstrong did not see any blood on defendant's clothing or any injury to defendant's hands or anything unusual about defendant's behavior.

Defendant did not testify.

## DISCUSSION

Counsel filed an opening brief that sets forth the facts of the case and asks this court to review the record to determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief. He has done so, in the form of an index card-sized letter, containing six nearly unintelligible "points."

As we interpret defendant's letter, he claims that the evidence presented to support his convictions is insufficient for several reasons: 1) the police never found a weapon

3

near him; 2) the police did not see any blood on him when he was arrested shortly after the assault; 3) Mishra described the assailant as a Black man, whereas defendant is Hispanic; and 4) when Gomes testified that he paid to fix the cars with sugar in their tanks, the court found he was lying.[2]

To the limited extent that these claims show conflicts in the evidence presented at trial, such conflicts were for the jury to resolve. "[A] reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation]. Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) To the limited extent that defendant's assertions may be relevant to the strength and nature of the evidence presented at trial, the record does not support the assertions. As we have described *ante*, ample evidence supports defendant's convictions.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The judgment is affirmed.

                                                   DUARTE        , J.

We concur:


       MAURO       , Acting P. J.


       HOCH       , J.

---

[2] The letter also contains references to the car's pink slip, a traffic ticket, and an oath.